| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

KEVIN CHEEKS,

                Petitioner,

– against –

**MEMORANDUM & ORDER**

THOMAS GRIFFIN,

                Respondent.

16-cv-3945 (ERK)

KORMAN, *J.*:

      On December 12, 2009, Kevin Cheeks entered the Shiniki Nail Salon in Queens, New York, announced that he had a gun, and ordered all employees and customers to hand over the valuables in their possession. The salon's surveillance camera captured a sharp image of the articles of clothing Cheeks wore, later recovered from his home, and recorded the time that the robbery occurred: approximately 12:52 PM to 12:57 PM. Two patrons from a nearby diner were informed of the robbery and pursued Cheeks as he fled the scene. Both patrons saw Cheeks drive away erratically in an ambulette, later identified as Cheeks's assigned work vehicle. The GPS tracking device in Cheeks's ambulette shows that at about 12:50 PM, two minutes before the robbery, the ambulette parked at the intersection in front of the nail salon. The driver turned the ignition back on at 12:56 PM and the ambulette sped off at 78 miles per hour. Within three hours of the robbery, Cheeks was arrested.

      Following a jury trial, Cheeks was found guilty of three counts of First-Degree Robbery and was sentenced as a persistent violent felony offender to three concurrent terms of incarceration of 25 years to life. The Appellate Division affirmed. *People v. Cheeks*, 107 A.D.3d 1013, 1014

1

(App. Div. 2013). In his *pro se* petition for a writ of habeas corpus, Cheeks asserts three grounds for relief. Each is without merit.

## DISCUSSION

*I. Allegedly Suggestive Lineup*

On the night of the robbery, the officer assigned to the case, Detective Walter, conducted a lineup with six individuals, including Cheeks. Tr. Min. 496:15. To avoid an unfairly suggestive lineup, the police sought individuals that shared certain characteristics with the defendant. Tr. Min. 497:2-9. Because Cheeks is missing at least one tooth and a witness told the detective that the robber did not have all his teeth, Tr. Min. 14:15-17, when looking for these individuals (also known as "fillers"), Detective Walter found five men around Cheeks's height and weight, with a similar skin color, and he "believed all five" selected were missing teeth. Tr. Min. 502:3-21. The detective did not memorialize in writing that the fillers did not have teeth nor is there a clear photograph of all fillers with their mouths wide open. Tr. Min. 14:2-7. Sheng Ying Yu, a customer at the nail salon, positively identified Cheeks after she asked all members of the lineup to stand up and open their mouths. Tr. 311:13-21. Although Yu was unsure whether Cheeks's missing teeth were on the top or bottom of his mouth, she testified that she could have identified Cheeks in the lineup without requesting that the fillers open their mouths. Tr. Min. 333:10-13.

Prior to trial, Cheeks's counsel moved to suppress the lineup identification made by Yu, arguing that the lineup became suggestive when Yu asked the participants to show their teeth. Tr. Min. 23:6-13. Specifically, he argued that the evidence failed to confirm that the other fillers shared Cheeks's distinctive characteristic and that the lineup was too suggestive if the fillers were not missing teeth. Tr. Min. 23:14-24. At the hearing, only Detective Walter testified and only four photographs of the lineup were placed into evidence. SR. 42. The photographs captured Cheeks

and the five fillers from different angles, but in each photograph, all of their mouths remained shut. SR. 42. Relying on Detective Walter's testimony, which was found to be credible, Tr. Min. 24:11-12, and the four photographs of the fillers with their mouths closed, the trial judge denied the motion to suppress Yu's identification. Specifically, he held that "the lineup was not so suggestive as to result in the likelihood of irreparable misidentification at trial." Tr. Min. 26:17-20.

Cheeks argues that trial counsel provided ineffective assistance because, in the pre-trial suppression hearing, he did not offer the photographs of the lineup members smiling. These photographs were admitted into evidence during the trial. Because they depicted only Cheeks and one other filler with noticeably missing teeth, Cheeks argues that this array undermined the finding of the trial judge. The argument that counsel was ineffective for failing to offer the photographs at the suppression hearing was one of those which the Appellate Division expressly rejected direct appeal. SR 146. And that holding is entitled to AEDPA deference. Moreover, it fails even without such deference. Assuming that the failure to introduce this array of photographs satisfies the first prong of the two-pronged test when determining whether a defendant has been deprived of effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the failure to offer the photographs in question at the suppression hearing does not satisfy the second prong of *Strickland*, namely, "a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Id.* at 694. It is hardly clear that the lineup in which at least two of the six participants were missing teeth would have rendered it so impermissibly suggestive as to require the suppression of either lineup or the eyewitness identification. Indeed, in addressing a similar question, the Second Circuit has held that, "it is not required . . . that all of the photographs in [an] array be uniform with respect to a given characteristic." *Jarret v. Headly*, 802 F.2d 34, 40 (citing *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984)). Thus, in

*United States ex rel. Cannon v. Montanye*, it observed that "if 'one or two' others in [a] five-person lineup had also worn a shirt of the color the attacker wore, 'the inference [of undue suggestion] would weaken very considerably.'" 486 F.2d 263, 268 (2d Cir. 1973).

Moreover, even assuming that Yu's identification of Cheeks would have been suppressed had his trial counsel offered the photographic array at issue, there is not a reasonable probability that a jury would have found him not guilty. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Indeed, the record reveals just the opposite. The evidence at trial was overwhelming. Passing over the three eyewitness identifications made in court, two eyewitnesses testified to specific and unique details regarding Cheeks's getaway vehicle, including the exact text on the ambulette and its identifying number. Tr. Min. 415:15, 560:22-24. The prosecution presented evidence showing that Cheeks's employer assigned Cheeks to be the sole driver of that particular vehicle. Tr. Min. 575:6-9. A GPS tracking device in the ambulette placed the vehicle in a one-block radius of the salon during the time frame that is virtually identical to the time the salon's camera recorded the robbery, Tr. Min. 624:6-15. The tracking device corroborated the eyewitnesses' claim that the vehicle sped away erratically from the scene shortly before 1:00 PM. Tr. Min. 625:7-12. The clothing worn by Cheeks during the robbery, captured by the salon's security camera, matched clothing seized in a search of Cheeks's residence. Tr. Min. 512:17, 517:3-6. Indeed, the photographic array admitted at trial, and which showed that Cheeks was missing a tooth, provided yet additional evidence that he was the one who committed the robbery.

## *II. Alleged Brady/Rosario Violation*

### A. Ineffective Assistance of Trial Counsel

In a petition pursuant to CPL § 440.10, Cheeks argued that trial counsel provided ineffective assistance when he ignored an alleged *Brady/Rosario* violation. *See Brady v. Maryland*,

4

373 U.S. 83 (1963); *see also People v. Rosario*, 9 N.Y.2d 286 (App. Div. 1961). During re-cross examination of Detective Walter, counsel asked the detective if he made any "scrap notes" while preparing witness interviews or the follow-up report. Tr. Min. 549:4-5. The detective testified that he did create "scrap notes," prompting trial counsel to request to see them. Tr. Min. 549:11. The prosecution objected to the line of questioning relating to the "scrap notes" as improper re-cross, and the judge held a sidebar discussion off the record. Tr. Min. 549:12-17. Immediately following the sidebar discussion, the trial judge asked the assistant district attorney if she had "a copy of that material that was turned over" to the defense to which the assistant district attorney responded: "Absolutely, your honor." Tr. Min. 549:18-20. Defense counsel then withdrew his request and stated that he had no further questions. Tr. Min. 549:21-24. Neither the assistant district attorney nor defense counsel mentioned the "scrap notes" during the rest of the trial. This colloquy suggests that the "scrap notes" were turned over.

Not surprisingly, the alleged failure of the prosecutor to turn over the "scrap notes" was not raised on direct appeal. The reason was explained to Cheeks in a letter that his appellate lawyer sent him. The letter stated that, due to an incomplete record, she did not view the prosecutor's alleged failure to turn over the detective's notes – a claim that Cheeks wanted her to pursue – as a viable issue on appeal. SR. 173. Moreover, she stated that she had spoken with trial counsel who "believed he either found the scrap notes or the DA gave him the scrap notes." SR. 173. On this basis, she decided not to raise the *Brady/Rosario* claim on direct appeal. Nevertheless, Cheeks claimed, in a post-trial collateral attack on the judgment of conviction brought pursuant to CPL § 440.10, that his trial counsel was ineffective for being aware of and failing to obtain the "scrap notes." SR. 164. The state court judge found "no reasonable possibility" that the assistant district attorney withheld the "scrap notes." SR. 247. This finding was based on the trial minutes and the

5

letter to Cheeks from his appellate counsel. Such a finding can only be rejected by a showing of "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). Cheeks has not presented any affirmative evidence to show that the assistant district attorney withheld the notes. Indeed, his claim now appears to acknowledge that, at the very least, they were turned over at trial.

Thus, in an unsuccessful coram nobis proceeding in the Appellate Division, Cheeks argued that the "DA gave [defense counsel] the scrap notes" at the sidebar which was held off the record. SR. 289-90. The claim was not that the notes were not turned over at trial, but they should have been turned over at an earlier point in the trial, SR. 290, namely, before five of prosecution's witnesses, to whom the notes presumably related to, testified. This claim was predicated on the rule that the "prosecution's failure to turn over the witnesses' prior statements constitutes per se reversible error regardless of prejudice to the defendant." SR. 290 (Pet'r's Br. citing *People v. Jones*, 70 N.Y.2d 547, 551 (1987)). This argument fails for three reasons.

First, the premise that the failure to turn over a witness's prior statements constitutes "per se reversible error" was overruled by the Legislature in 2000. *See People v. Martinez*, 22 N.Y.3d 551, 593 (N.Y. 2014) (New York Criminal Procedure Law § 240.75 "prohibits reversal where a defendant has been deprived of *Rosario* material at a trial or other proceeding absent a reasonable possibility that the nondisclosure materially contributed to the result"). Second, the record contains documentary evidence showing that the "scrap notes" were turned over to defense counsel prior to trial. Specifically, during the pre-trial suppression hearing, the assistant district attorney turned over a typed list titled "People's List of Rosario/Discovery Material," Tr. Min. 12:15-18, and on that list, "Handwritten notes Det Walter" appeared under the heading "Turned Over at Hearing," SR. 39. At no time prior to or during the trial did defense counsel suggest that the assistant district attorney failed to provide each document on the itemized list. Cheeks has not offered clear and

convincing evidence to support his claims that the notes were either withheld or were turned over too late. Third, the evidence of Cheeks's guilt was so overwhelming that it is difficult to envision how the witnesses' testimony could have been impeached by the "scrap notes" in a way that would have affected the verdict.

### B. Ineffective Assistance of Appellate Counsel

Nor is there any merit to Cheeks's argument, which was also made in the unsuccessful coram nobis proceeding, that his appellate counsel provided ineffective assistance when she decided not to pursue a claim that trial counsel was ineffective for failing to raise the *Brady/Rosario* violation at trial. Specifically, the record shows that after working on Cheeks's case for several months and contacting his trial lawyer, appellate counsel determined that because the substantive conversation relating to the alleged violation occurred off the record, other arguments were more likely to prevail on appeal. SR. 173. Although appellate counsel's strategy differed from Cheeks's preferred approach, an indigent defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Appellate counsel's strategic decision to pursue other claims, formulated after she diligently assessed the case, surpassed the threshold an attorney must meet to provide reasonable assistance.

Even if the decision to focus on other claims constituted deficient performance, this appellate strategy did not prejudice the defense because the claim was not meritorious. Although defense counsel's request to see the notes during Detective Walter's re-cross examination may suggest that they were not turned over, the trial minutes suggest that they were not withheld. *Cf. Mayo v. Henderson,* 13 F.3d 528, 530 (2d Cir. 1994) (record unambiguously reveals that the

prosecution did not give an officer's notes to the defense until mid-trial). Ambiguity in the record reduced the likelihood that this claim would have prevailed on appeal. Moreover, to the extent that any confusion was created by the off the record conversation between the attorneys and the trial judge, that gap was due to petitioner's failure to clearly develop the record. Finally, although I have addressed Cheeks's ineffective assistance of counsel claims without reference to AEDPA deference, the "double deference," *Harrington v. Richter*, 562 U.S. 86, 105 (2011)*,* of the state court holdings rejecting his ineffective assistance of counsel claims compels the rejection of those claims.

## CONCLUSION

The petition for a writ of habeas corpus is denied and I decline to issue a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
June 20, 2017

*Edward R. Korman*
Edward R. Korman
United States District Judge